UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | § |
| PETITIONER, | § |
| v. | § CIVIL ACTION NO. 1:23-CV-843-RP |
| 12.97983000 BITCOIN SEIZED FROM BINANCE USER ID: 443401465, and | § |
| 1.30459657 BINANCE COIN SEIZED FROM BINANCE USER ID: 443401465, | § |
| RESPONDENTS. | § |

**AMENDED VERIFIED COMPLAINT FOR FORFEITURE**

Comes now Petitioner United States of America, by and through the United States Attorney for the Western District of Texas and the undersigned Assistant United States Attorney, pursuant to Rule G, Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, Federal Rules of Civil Procedure., and respectfully states as follows:

**NATURE OF THIS ACTION**

This action is brought by the United States of America seeking forfeiture to the United States of the following property:

1. 12.97983000 Bitcoin (BTC) seized from Binance User ID: 443401465; and

2. 1.30459657 Binance Coin (BNB) seized from Binance User ID: 443401465,

hereinafter referred to as the Respondent Property.

**POTENTIAL CLAIMANTS**

The only known potential claimant for this forfeiture is Patrick Lambrecht, a German national and owner of Binance Account 443401465.

## JURISDICTION AND VENUE

Under Title 28 U.S.C. § 1345, this Court has jurisdiction over an action commenced by the United States, and under Title 28 U.S.C. § 1355(a), jurisdiction over an action for forfeiture. This Court has *in rem* jurisdiction over the Respondent Property under Title 28 U.S.C. §§ 1355(b) and 1395. Venue is proper in this district pursuant to Title 28 U.S.C. § 1355(b)(l) because the acts or omissions giving rise to the forfeiture occurred in this district, and pursuant to Title 28 U.S.C. §§ 1355(b)(l)(B) and 1395(b) because the Respondent Property was immediately received and initially retained in the district as part of the seizure process.

## STATUTORY BASIS FOR FORFEITURE

This is a civil forfeiture action *in rem* brought against the Respondent Property for violations of Title 18 U.S.C. §§ 1030, 1956, and 1957 (Fraud Related Activity in Connection with Computers and Money Laundering), and subject to forfeiture to the United States of America pursuant to Title 18 U.S.C. §§ 98l(a)(1)(A) and (C), which state:

> **§ 981.  Civil forfeiture**
> **(a)(l)** The following property is subject to forfeiture to the United States:
> \* \* \*
> **(A)** Any property, real or personal, involved in a transaction or attempted transaction in violation of section 1956, 1957 or 1960 of this title, or any property traceable to such property.
> \* \* \*
> (C) Any property, real or personal, which constitutes or is derived from proceeds traceable to a violation . . . of this title or any offense constituting "specified unlawful activity" (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense.
>
> **§ 1030.  Fraud and related activity in connection with computers**
> **(a)**  Whoever—
> **(1)** having knowingly accessed a computer without authorization or exceeding authorized access, and by means of such conduct having obtained information that has been determined by the United States Government pursuant to an Executive order or statute to require protection against unauthorized disclosure for reasons of national defense or foreign relations, or any restricted data, as defined in paragraph y. of section 11 of the Atomic Energy Act of 1954, with

2

reason to believe that such information so obtained could be used to the injury of the United States, or to the advantage of any foreign nation willfully communicates, delivers, transmits, or causes to be communicated, delivered, or transmitted, or attempts to communicate, deliver, transmit or cause to be communicated, delivered, or transmitted the same to any person not entitled to receive it or willfully retains the United States entitle to receive it;

**(2)** intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains—

**(A)** information contained in a financial record of a financial institution, or of a card issuer as defined in section 1602(n) of title 15, or contained in a file a consumer reporting agency on a consumer, as such terms are defined in the Fair Credit Reporting Act (15 U.S.C. 1681 et seq.) . . .

### § 1956.  Laundering of monetary instruments

**(a)(1)**  Whoever, knowing that the property involved in a financial transaction represents the proceed of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity

**(a)(2)**  Whoever transports, transmits, or transfers, or attempts to transport, transmit, or transfer a monetary instrument or funds from a place in the United States to or through a place outside the United States or to a place In the United States from or through a place outside the United States

**(b)(1)** Whoever conducts or attempts to conduct a transaction described in subsection (a)(1) or (a)(3), or a transportation, transmission, or transfer described in subsection (a)(2), is liable to the United States for a civil penalty of not more than the greater of the value of the property, funds, or monetary instruments involved in the transaction.

### § 1957.  Engaging in monetary transactions in property derived from specified unlawful activity

**(a)** Whoever, in any of the circumstances set forth in subsection (d), knowingly engages or attempts to engage in a <u>monetary transaction</u> in <u>criminally derived property</u> of a value greater than $10,000 and is derived from<u> specified unlawful activity,</u> shall be punished as provided in subsection (b).

**(c)** In a prosecution for an offense under this section, the Government is not required to prove the defendant knew that the offense from which the <u>criminally derived property</u> was derived was<u> specified unlawful activity.</u>

**(d)**The circumstances referred to in subsection (a) are—

> **(1)** that the offense under this section takes place in the United States or in the special maritime and territorial jurisdiction of the United States; or
>
> **(2)** that the offense under this section takes place outside the United States and such special jurisdiction, but the defendant is a United States person (as defined in section 3077 of this title, but excluding the class described in paragraph (2)(D) of such section).

## **FACTS IN SUPPORT OF VERIFIED COMPLAINT FOR FORFEITURE**

1. In October 2022, the Victim, a United States citizen, contacted the FBI's Internet Crime Complaint Center to report a theft of 200.7072 Ether from his Trezor Hardware Wallet. At the time, 200.7072 Ether was worth approximately $328,205.00.

2. The theft occurred on September 15, 2022, when the Victim accessed his wallet to check his Ether balance.

3. After multiple failed login attempts, the Victim used his recovery seed phrase, which he kept secured in a locked safe.

4. The Victim was able to access his wallet and observed a correct balance of 200.7072 Ether.

5. On September 21, 2022, the Victim checked his balance a second time and noticed his entire Ether balance of 200.7072 had previously been sent, without his consent, to another address on September 15, 2022, during the same timeframe that the Victim deployed his recovery seed phrase.

6. Working on the Victim's behalf, a private investigator determined the executable filename, "ScreenConnect.ClientService.exe" was flagged as potential malware during a custom virus scan and was responsible for the illicit capture of the Victim's recovery seed phrase.

7. The FBI confirmed that based on an examination of event logs from the Victim's computer, the executable file named "ScreenConnect.ClientService.exe" was active and

monitoring the Victim's computer during the approximate time of the theft.

8.  Moreover, logs showed the executable file has accessed multiple registry key files on the Victim's computer in the months leading up to the theft.

9.  FBI also confirmed the transfer of the Victim's 200.7072 Ether occurred during the same approximate time window the Victim reported using his recovery seed phrase.

10. On September 15, 2022, the 200.7072 Ether were transferred from the Victim's Trezor wallet to 0x57E6Dfc61040Ba84578bc7c30Da9CD7E28cBc0C3 (the "Unattributed Wallet"), where it remained dormant until October 26, 2022.

11. On October 26, 2022, approximately 204.34 Ether went from the Unattributed Wallet to Binance account 443401465 ("Binance 1465"), which is owned by Patrick Lambrecht. More specifically, Binance 1465 received three transfers from the Unattributed Wallet within approximately 45 minutes on October 26th, 2022: 69.88 Ether, 103.40 Ether, and 31.06 Ether. These 204.34 Ether, which are proceeds of access device fraud, were worth over $300,000 at the time of the transfer. The transfer of the above Ether is further described below:

   a. On October 26, 2022, at 11:30:39 a.m., 69.88 Ether (approximate $109,473 value at the time of transfer) was deposited into Binance 1465 (ETH Transfer 1).

   b. On October 26, 2022, at 11:44:34 a.m., 103.60 Ether (approximate $162,298 value at the time of transfer) was deposited into Binance 1465 (ETH Transfer 2).

   c. On October 26, 2022, at 12:16:32 p.m., 31.06 Ether (approximate $48,664 value at the time of transfer) was deposited into Binance 1465 (ETH Transfer 3).

12. At the time the Ether was deposited into Binance 1465, it contained at least an approximate amount of 484,526 Tether (USDT) and 0.00040 Bitcoin (BTC) (valued collectively at approximately $484,534). An analysis of account activity of Binance 1465 suggests that this

5

$484,534 balance going forward followed a general pattern of swapping back and forth between USDT and BTC with occasional deposits and withdrawals, resulting in the Bitcoin balance of 12.98003 that was in the account on November 9, 2022.

13. BTC uses the Bitcoin blockchain, while USDT is available on multiple blockchains, including Ethereum, Avalanche, Cosmos, and Celo. To convert a cryptocurrency on one blockchain to a separate blockchain requires a chain hop, which can be used to disguise the ownership or source of the cryptocurrency.

14. On November 8, 2022, FBI requested records from Binance regarding the analysis of other transactions, and these Binance records showed Lambrecht had converted the ETH Transfer 1 and ETH Transfer 2 (173.48 Ether) to 12.87308 BTC and the ETH Transfer 3(31.06 Ether) into 163.61 BNB within minutes after moving it to Binance 1465 on October 26, 2022.

15. Within approximately 15 minutes of the swap from 173.48 Ether to 12.87308 BTC, 4.4998 Bitcoin (valued at approximately $93,490 at the time of transfer) was transferred to deposit address bc1qde72xnw0qg0q57renh59fqssfl2uv7jqxstj7s ("bc1-j7s"). Blockchain analytic software identifies the deposit address bc1-j7s as belonging to Hydra, a Russian Darknet Marketplace.

16. On April 5, 2022, the U.S. Department of the Treasury's Office of Foreign Assets Control (OFAC) sanctioned the world's largest and most prominent darknet market, Hydra Market (Hydra), in a coordinated international effort to disrupt proliferation of malicious cybercrime services, dangerous drugs, and other illegal offerings available through the Russia-based site.

17. Hydra facilitates the sale of illicit items such as narcotics, stolen personal identifying information, malware, hacking services, forged documents, and counterfeit currencies. Hydra allows buyers to purchase these items and services using cryptocurrencies, such as BTC.

18. On October 26, 2022, at 12:10:49 p.m. (within six minutes of sending the Bitcoin to Hydra at bc1-j7s), the remaining 8.37368 BTC was converted to 597.14 BNB (the "Illicit BNB-1").

19. On October 26, 2022, at 12:21:50 p.m., the ETH Transfer 3 (31.06 Ether) had 30.83 Ether converted to 162.38 BNB and then on the same date at 12:34:54, the remaining 0.23 Ether was converted to 1.23 BNB, which collectively equated to 163.61 ("Illicit BNB-2").

20. On October 26, 2022, at 12:34:38 p.m. (within 24 minutes of converting the BTC to BNB and within 4 minutes of the last conversion of the ETH Transfer 3 proceeds), Binance 1465 transferred 755 BNB (valued at approximately $219,101 at the time of transfer) to Binance account 80655564 (Binance 5564), which included at least 723 of the Illicit BNB-1 and Illicit BNB-2 funds.

   a. On October 26, 2022, at 04:54:07 p.m., Binance 5564 sent 45 BNB (valued at approximately $13,059 at the time of transfer) back to Binance 1465.

      i. On October 26, 2022, at 04:56:12, Binance 1465 converted 44.22 of the BNB it received from Binance 5564 to 12,778.71 USDT (valued at approximately $12,778 at the time of transfer).

      ii. On October 27, 2022, at 08:22:58 a.m., Binance 5564 sent 34 BNB (valued at approximately $9,747.80 at the time of transfer) back to Binance 1465.

21. All of these transactions, from receiving the initial Ether to converting it to BTC and BNB, sending BTC to Hydra, converting BTC to BNB, and sending the BNB to another Binance account took place in just over an hour on October 26, 2022.

22. Each of these transactions were monetary transactions in criminally derived property of a value greater than $10,000 and were derived from specified unlawful activity.

7

23.     Binance 1465 had the following cryptocurrency deposit activity:

| DEPOSIT ANALYSIS | | | |
|---|---|---|---|
| Binance 1465 - Deposit Addresses | Count of Deposits | Sum of Amount | Sum of BUSD |
| 0x713f7706f2cc8fce61a8a745faea1ff125e0f40d | 16.00 | 350,431.17 | $729,960.71 |
|     DAI | 1.00 | 24,597.15 | $24,594.69 |
|     ETH | 7.00 | 256.02 | $398,944.16 |
|     MATIC | 2.00 | 120,100.00 | $100,944.05 |
|     USDT | 6.00 | 205,478.00 | $205,477.80 |
| 83JR6GiCdjZ3LjBWzo8875A9dqbouJqdDUtn8zFkkpGzTT7thRWg | 2.00 | 626.90 | $93,533.48 |
|     XMR | 2.00 | 626.90 | $93,533.48 |
| bc1qu9g0wnc7h9jl0defe4gxx2c7gmrnekar4vehd8 | 4.00 | 7.86 | $158,436.21 |
|     BTC | 4.00 | 7.86 | $158,436.21 |
| LgkzGCBhxd4pBfjgmkzrHycjEp6TPSLEZ1 | 8.00 | 165.02 | $9,045.97 |
|     LTC | 8.00 | 165.02 | $9,045.97 |
| THSgrSKVeWGyYcPkpwqbLQTuzKYyZCErDP | 19.00 | 767,803.63 | $767,886.75 |
|     USDT | 19.00 | 767,803.63 | $767,886.75 |
| Grand Total | 49.00 | 1,119,034.58 | $1,758,863.12 |

*Table 1. Analysis of Cryptocurrency Deposits into Binance 1465[1]*

24.     Binance #1465 had seven Ether deposits, three of which were the identified proceeds of access device fraud. The proceeds of access device fraud made up approximately 80% of all Ether deposits into Binance #1465.

25.     Lambrecht did not purchase cryptocurrency from Binance. Instead, he would deposit various cryptocurrencies, primarily ETH (where ETH was predominately the proceeds of access device fraud as previously described) and USDT, into his account and then perform a high number of swaps between crypto currencies.

    a.  Between May 6, 2022 (when the account received its first cryptocurrency deposit) and November 9, 2022, Binance 1465 made 124 swaps from USDT to BTC and 123 swaps from BTC to USDT. An example of this can be seen on September 19, 2022, when USDT was swapped to BTC or BTC was swapped to USDT a total of 14 times.

---

[1] "Count of Deposits" is the number of times a cryptocurrency deposit is going into Binance 1465 specific to a particular cryptocurrency; "Sum of Amount" is the summation of a particular cryptocurrency into Binance 1465; "Sum of BUSD" is the summation of a particular cryptocurrency into Binance 1465 valued in BUSD, where BUSD is Binance's stablecoin valued roughly at the same value as the U.S. dollar.

26. As of November 9, 2022, the account contained approximately 12.98003 Bitcoin, valued at $226,707. These Bitcoin were almost entirely deposited into Binance 1465 prior to the ETH Transfer 1, ETH Transfer 2, and ETH Transfer 3, through various cryptocurrency deposits that were ultimately converted or swapped to Bitcoin by November 9, 2022.

27. Furthermore, between October 26, 2022, and November 9, 2022, approximately 96 other transactions occurred within Binance 1465 (after the 755 BNB transfer to Binance 5564), including deposits, trades and withdrawals of various currencies. During this period, Lambrecht's account fluctuated between approximately $226,707 and $495,241 worth of cryptocurrency.

28. On November 7, 2022, two days before the FBI seized Binance 1465, Binance 1465 swapped USDT to BTC or BTC to USDT a total of 8 times.

29. In addition to the transaction notated above in paragraph 15, where 4.4998 BTC was sent to Hydra, Binance 1465 transferred Bitcoin to Hydra on the following dates and for the following amounts:

| Date | BTC Amount | BUSD Amount | Transaction Hash |
| --- | --- | --- | --- |
| 11-09-2022[2] | 6.6598 | $116,319.40 | ca5c6efb025320184d693b0984f5feff675be37a0e70f5a97cff15b95db17aaf |
| 11-02-2022 | 1.9998 | $40,294.09 | ae8c40f8ad521fcd891afd8ac2d481eef3716faf37b109f11094e0d299e61461 |

30. As Hydra provides illegal goods and services, Lambrecht used his account to promote specified unlawful acts.

31. Lambrecht would use the account to hide the source and destination of his illicitly procured funds by using the following techniques: moving funds rapidly in a series of small

---

[2] This is the same date that FBI seized Binance 1465.

9

amounts to various accounts, converting the funds to other forms of virtual currency, and commingling their fraud proceeds.

32. Lambrecht further used the account to send crypto currency to a known Darknet website to promote illicit activity.

33. Starting January 1, 2021, cryptocurrency owners whose transactions amount exceeds 600,000 rubles in a calendar year were required to report their crypto transactions and wallet balances to the Russian tax authorities. The law applies equally to individuals and organizations. Binance 1465 far surpassed 600,000 rubles in 2022.

34. One likely motivation for Lambrecht to purchase cryptocurrency in person with cash was to send crypto to his Binance account while avoiding Russia's reporting requirements.

*Seizure of the Respondent Property*

35. On November 18, 2022, FBI San Antonio Division CY-2 Squad executed a federal seizure warrant for all Bitcoin and Binance Coin held by Binance User ID: 443401465. The warrant was executed via email to Binance (case@binance.com).

36. On January 5, 2023, Binance transferred 12.97983000 BTC from Lambrecht's BTC address to a government-controlled BTC address. According to ycharts.com, as of January 5, 2023, one BTC was equal to approximately $16,855.17 United States dollars. Therefore, 12.97983000 BTC approximately converts to $244,469.00 in United States currency.

37. On January 5, 2023, Binance transferred 1.30459657 BNB from Binance 1465 to a government-controlled BNB address. According to Nasdaq.com, as of January 5, 2023, one BNB was equal to approximately $257.10 United States dollars. Therefore, 1.30459657 BNB approximately converts to $256.29 in United States currency.

38. These facts reasonably establish that the Respondent Property constitutes or derives from proceeds traceable to violations of Title 18 U.S.C. §§ 1030 and 1956, and the Respondent Property is thereby subject to civil forfeiture pursuant to Title 18 U.S.C. §§ 981(a)(l)(A) and (C).

## **PRAYER**

WHEREFORE, Petitioner, United States of America, prays that due process issue to enforce the forfeiture of the Respondent Property, that due notice pursuant to Rule G(4) be given to all interested parties to appear and show cause why forfeiture should not be decreed,[3] and in accordance with Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, Fed. R. Civ. P., that the Respondent Property be forfeited to the United States of America, that the Property be disposed of in accordance with the law and for any such further relief as this Honorable Court deems just and proper.

Respectfully submitted,

JAIME ESPARZA
United States Attorney

By:  _____/s/_____
Mark J. Tindall
Assistant United States Attorney
Asset Forfeiture Section
903 San Jacinto Blvd, Ste. 334
Austin, Texas 78701
Tel: (512) 916-5858
Texas Bar No. 24071364
Email: mark.tindall@usdoj.gov
Attorneys for the United States of America

---

[3] Appendix A, Notice of Complaint for Forfeiture, which is being filed along with this complaint, will be sent to those known to the United States to have an interest in the Respondent Property.

## **CERTIFICATE OF SERVICE**

      I hereby certify that on June 3, 2024, the foregoing instrument was electronically filed with the Clerk of the Court using the CM/ECF System which transmits notification of such filing to the following CM/.ECF participant:

Igor Litvak, Esq.
The Litvak Law Firm, PLLC
Email: igor@litvaklawny.com

                                                            /s/
                                                Mark J. Tindall
                                                Assistant United States Attorney

## **VERIFICATION**

Special Agent Blake E. Crow, declares and says that:

1.I am a Special Agent with the Federal Bureau of Investigation ("FBI"), assigned to the San Antonio Division CY-2 Squad, and I am the investigator responsible for the accuracy of the information provided in this litigation.

2.I have read the above Verified Complaint for Forfeiture and know: the contents thereof; the information contained in the Verified Complaint for Forfeiture has been furnished by official government sources; and the allegations contained in the Verified Complaint for Forfeiture are true based on information and belief.

Pursuant to Title 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 3, 2024.

_____
Blake C. Crow, Special Agent
Federal Bureau of Investigation

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, § | |
| § | |
| PETITIONER, § | |
| § | |
| v. § | CIVIL ACTION NO. 1:23-CV-843-RP |
| § | |
| 12.97983000 BITCOIN SEIZED FROM § | |
| BINANCE USER ID: 443401465, and § | |
| § | |
| 1.30459657 BINANCE COIN SEIZED § | |
| FROM BINANCE USER ID: 443401465, § | |
| § | |
| RESPONDENTS. § | |

**NOTICE OF COMPLAINT FOR FORFEITURE**

On June 3, 2024, the United States of America, by and through its United States Attorney for the Western District of Texas and the undersigned Assistant United States Attorney, filed an Amended Verified Complaint for Forfeiture against the property described below, which is also specifically described in the Verified Complaint for Forfeiture, and which is subject to forfeiture to the United States pursuant to Title 18 U.S.C. §§ 981(a)(1)(A) and (C), as property involved in the violations of Title 18 U.S.C. §§ 1030, 1956, and 1957, namely:

1. 12.97983000 Bitcoin (BTC) seized from Binance User ID: 443401465; and

2. 1.30459657 Binance Coin (BNB) seized from Binance User ID: 443401465,

hereinafter referred to as the Respondent Property.

Pursuant to Rule G(4)(b) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, notice to any person who reasonably appears to be a potential claimant shall be by direct notice. Accompanying this notice is the Verified Complaint for Forfeiture which has been filed in this cause and which describes the Respondent Property. Pursuant to

Supplemental Rule G(4)(b), any person claiming an interest in the Respondent Property who has received direct notice of this forfeiture action must file a Claim in compliance with Rule G(5)(a), with the court within **thirty-five (35) days after the notice was sent, if delivered by mail (if mailed, the date sent is provided below), or within 35 days of the date of delivery, if notice was personally served**.  An Answer or motion under Rule 12 of the Federal Rules of Civil Procedure must then be filed within **twenty-one (21)** days of the Claim being filed.  The Claim and Answer must be filed with the Clerk of the Court, 501 W. 5th Street, Austin, Texas 78701, and copies of each must be served upon Assistant United States Attorney Mark Tindall, 903 San Jacinto Blvd., Suite 334, Austin, Texas 78701, or default and forfeiture will be ordered.  *See* Title 18 U.S.C. § 983(a)(4)(A) and Rule G(5) of the Supplemental Rules for Admiralty or Maritime Claim and Asset Forfeiture Actions.

Failure to follow the requirements set forth above will result in a judgment by default taken against you for the relief demanded in the complaint.

**DATE NOTICE SENT:** _____

Respectfully submitted,
JAIME ESPARZA
United States Attorney

By: _____
Mark J. Tindall
Assistant United States Attorney
Asset Forfeiture Section
903 San Jacinto Blvd, Ste. 334
Austin, Texas 78701
Tel: (512) 916-5858
Texas Bar No. 24071364
Email: mark.tindall@usdoj.gov
Attorneys for the United States of America

2